COMPASS BANK, Appellant,

v.

MFP FINANCIAL SERVICES, INC. f/k/a MFP Technology Services, Inc., Appellee.

No. 05–02–01830–CV.

Court of Appeals of Texas, Dallas.

Jan. 12, 2005.

Jack M. Kuykendall, Law Office of Jack M. Kuykendall, Dallas, for appellant.

Brian A. Farlow, Maryann Landrigan, Deborah A. Savarese Sloan, Dallas, for appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice MOSELEY.

MFP Financial Services, Inc. f/k/a MFP Technology Services, Inc. (MFP) and Webb Cooley Company, Inc. (Webb Cooley) entered into a settlement agreement resolving disputes between them. Despite Webb Cooley's undisputed material breach of the settlement agreement, the purchaser of Webb Cooley's accounts receivables, Compass Bank, sued MFP based on the settlement agreement. After a bench trial, the trial court entered a take-nothing judgment in favor of MFP. In nine issues, Compass Bank challenges the trial court's findings of fact and conclusions of law in favor of MFP on MFP's affirmative defenses and claims for offsets, and on Compass Bank's own affirmative defense of election of remedies. Compass Bank also argues the trial court erred in not entering a money judgment in its favor. We conclude the trial court did not err in: (1) denying Compass Bank's untimely motion for new trial; (2) holding that MFP had proved its affirmative defense of prior material breach; and (3) holding that Compass Bank was precluded from asserting its affirmative defense of election of remedies or, alternatively, that Compass Bank's affirmative defense failed. We therefore affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

MFP leased computers and other equipment to customers throughout the United States. As owner of the equipment, MFP was responsible for the personal property ad valorem taxes levied by the taxing authorities in the various jurisdictions where the equipment was located. MFP's lease agreements require the lessees to reimburse MFP for those taxes. Determining each lessee's correct share of the taxes

owed in each jurisdiction required someone to file renditions of property values with the taxing authorities, pay the tax bills, allocate to each lessee its share of the taxes owed on its leased equipment in each jurisdiction, and recover from each lessee its share of the taxes.

In 1994, MFP and Webb Cooley contracted for Webb Cooley to perform some of those services. Pursuant to their agreement, MFP would supply information regarding the lessees. Based on that information, Webb Cooley would file a rendition of property values with each taxing authority. After the tax assessor reviewed the rendition and assessed the value of the property, Webb Cooley then had the discretion to appeal the assessment. After any appeals, the tax assessor would send Webb Cooley a final tax bill. Webb Cooley would then bill each lessee for the taxes owed and for Webb Cooley's fee. The lessees would pay into a lockbox account, from which Webb Cooley would pay the tax bill and retain its fee (which was based on the tax savings, if any, realized from appeals).

MFP initially paid Webb Cooley a flat fee for its services, but in 1995 they signed a contract changing the flat fee to a fee-for-savings program effective for the tax years 1996 and 1997. The agreements between MFP and its lessees provided only that the lessees were liable for taxes (and not any administrative fees), so any lessee could refuse to pay Webb Cooley's fee. In addition, Webb Cooley agreed to waive fees for the lessees who opted out of the fee-for-savings program, even if a lessee opted out after the tax service was rendered. Webb Cooley indemnified MFP for all tax liabilities.

The 1995 agreement was automatically continued for a two-year period. Beginning in tax year 1998, the parties orally agreed that MFP would pay the taxes and invoice the lessees for their share of the tax liability and for Webb Cooley's fee. Pursuant to this agreement, Webb Cooley would prepare billing files and deliver them to MFP. MFP would use the billing files to "rebill" its lessees by sending them tax invoices. MFP would also invoice its lessees for Webb Cooley's fees. However, Webb Cooley fell behind in providing the billing files, which resulted in delays in rebilling the lessees and paying Webb Cooley. In addition, Webb Cooley was not paying the taxes on a timely basis. These developments led to litigation between MFP and Webb Cooley in 1999, which was resolved through the execution of a settlement agreement dated January 14, 2000. It is this settlement agreement that is the subject of the present suit.

The settlement agreement provided that Webb Cooley would provide MFP, "as soon as reasonably practicable," the lessee tax information and Webb Cooley's billing files pertaining to assets taxed in Alabama, Massachusetts, and West Virginia for the tax year 1998, as well as the billing files pertaining to assets taxed in certain other states for the tax year 1999. The settlement agreement also provided that MFP would pay Webb Cooley's fees associated with each billing file, as calculated under the 1995 agreement.

In July 2000, Webb Cooley sent MFP the billing files and an invoice for $763,063.20 for its services. However, Webb Cooley's billing files were incorrect and MFP had to completely redo them in order to rebill its lessees for their shares of the taxes. MFP also invoiced its lessees for Webb Cooley's fees in the amount of $574,896.60. MFP collected most of those fees from its lessees and deducted amounts for certain opt-outs and errors. In October 2000, MFP paid Webb Cooley $163,177.22.

Webb Cooley's accounts receivables, including any amounts owed to it by MFP, were acquired by Compass Bank through foreclosure and sale. (The parties agree that Compass Bank's interest in the MFP receivables is subject to all of the limitations, defenses, and offsets that MFP could have asserted against Webb Cooley.) Compass Bank sued MFP for breach of the settlement agreement based on its failure to pay the face value of Webb Cooley's July 2000 invoice, minus MFP's payment. MFP answered, asserting various affirmative defenses. MFP also requested a declaratory judgment that Webb Cooley failed to properly perform the tax services and thereby breached the settlement agreement, or in the alternative, that MFP was entitled to certain offsets based on the errors Webb Cooley made in the billing files.

On August 30, 2002, after a non-jury trial, the trial court rendered a take-nothing judgment in favor of MFP on Compass Bank's claim. The trial court also entered findings of fact and conclusions of law.[1] Shortly after the final judgment was signed, Compass Bank filed a motion to modify, correct, and reform the judgment. Compass Bank also filed a motion for new trial on October 30, 2002, sixty-one days after the final judgment was signed. The motion asserted that one of the parties' stipulations[2] constituted a judicial admission by MFP establishing its liability under the settlement agreement and contradicting MFP's defense of excuse based on

Webb Cooley's prior material breach. On December 12, 2002, the trial court heard the motion for new trial and orally overruled it.

Compass Bank appeals, asserting eight issues. The first and eighth issues relate to Compass Bank's defense of election of remedies. The outcomes of these issues are dispositive of the appeal.

## MOTION FOR NEW TRIAL

In its eighth issue, Compass Bank contends the trial court erred in denying its motion for new trial because the language in Stipulation No. 32[3] established MFP's liability under the settlement agreement. A motion for new trial must be filed within thirty days after the judgment is signed. Tex.R. Civ. P. 329b(a). Compass Bank did not file its motion for new trial until the sixty-first day after the judgment was signed. "A court may not enlarge the period for taking any action under the rules relating to new trials except as stated in these rules." Tex.R. Civ. P. 5. Moreover, an order overruling an untimely motion for new trial cannot be the basis of appellate review, even if the trial court acted within its plenary power period. *Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex.2003). Accordingly, we resolve Compass Bank's eighth issue against it.

## FINDINGS/CONCLUSIONS REGARDING AFFIRMATIVE DEFENSES

Compass Bank's first issue attacks the trial court's findings of fact and conclu-

1. The trial court originally entered findings of fact and conclusions of law on November 6, 2002. On November 18, 2002, Compass Bank filed a request for additional and amended findings of fact and conclusions of law. The trial court ruled on that request by making handwritten notations on the filed document; the notations indicate the trial court's rulings were made on December 2, 2002. The trial court also signed amended

findings of fact and conclusions of law on April 16, 2003.

2. Stipulation No. 32 states that "[t]he revised billing files prepared by MFP ... and the "Adjusted Fees Outstanding" column of [Exhibit 78] ... accurately reflect the fees owed to Webb Cooley on behalf of each lessee...."

3. *See supra* note 2.

sions of law regarding two affirmative defenses: MFP's affirmative defense of prior material breach and Compass Bank's own unpleaded affirmative defense that despite Webb Cooley's breach, MFP elected to treat the settlement agreement as continuing in effect.

## A. Applicable Law

### 1. Affirmative Defenses Generally

■ An affirmative defense is a matter asserted in avoidance of a party's argument or position, rather than a matter asserted in denial of that party's position. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex.1991). The party asserting an affirmative defense bears the burden of pleading and proving its elements. *See Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Rule 94 requires a party to plead affirmatively those affirmative defenses listed in the rule "and any other matter constituting an avoidance or affirmative defense." Tex.R. Civ. P. 94. If an affirmative defense is not pleaded or tried by consent, it is waived, and the trial court has no authority to make a fact finding on that issue. *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 327–28 (Tex.App.-Houston [1st Dist.] 1997, pet. denied).[4]

### 2. Scope and Standards of Review

■ Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997), *pet. denied*, 977 S.W.2d 562 (Tex.1998) (per curiam). When a complete reporter's record is filed, the trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *Catalina*, 881 S.W.2d at 297. In doing so we do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *FDIC v. F & A Equip. Leasing*, 854 S.W.2d 681, 684 (Tex.App.-Dallas 1993, no writ). Rather, when addressing a legal sufficiency challenge, we view the evidence in a light most favorable to the finding, consider only the evidence and inferences that support the finding, and disregard all evidence and inferences to the contrary. *Catalina*, 881 S.W.2d at 297. We uphold the finding if more than a scintilla of evidence exists to support it. *Id.* In reviewing a factual sufficiency challenge, we examine all of the evidence and set aside a finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

■ We do not review a trial court's conclusions of law for factual sufficiency. *Ashcraft*, 952 S.W.2d at 910. Rather, we evaluate them independently, determining whether the trial court correctly drew the legal conclusions from the facts. *Dallas Morning News Co. v. Bd. of Trustees of Dallas Indep. Sch. Dist.*, 861 S.W.2d 532, 536 (Tex.App.-Dallas 1993, writ denied). However, incorrect conclusions of law will not require a reversal if the controlling findings of fact will support the judgment

---

4. An exception to the general rule that affirmative defenses are waived if not pleaded arises if the other party anticipates defensive matters and sets them forth in its own pleadings. *See Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex.1991). However, Compass Bank does not assert this exception applies in the context of this case.

under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). When findings of fact are included among the trial court's conclusions of law, we will review them as findings of fact. *Sears Roebuck & Co. v. Dallas Cent. Appraisal Dist.*, 53 S.W.3d 382, 385–86 (Tex.App.-Dallas 2000, pet. denied).

### 3. Prior Material Breach

■■■■ "When one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Davis v. Allstate Ins. Co.*, 945 S.W.2d 844, 845–46 (Tex.App.-Houston [1st Dist.] 1997, pet. withdrawn); *see Mustang Pipeline Co. v. Driver Pipeline. Co.*, 134 S.W.3d 195, 196 (Tex.2004) (per curiam). Thus, the contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded. *See RE/MAX of Tex., Inc.*, 961 S.W.2d at 327 (citing Tex.R. Civ. P. 94).

It is undisputed that Webb Cooley materially breached the settlement agreement before MFP declined to pay Webb Cooley's July 2000 invoice. However, Compass Bank asserts that after Webb Cooley's material breach, MFP elected to treat the settlement agreement as continuing in effect, and thus waived Webb Cooley's breach as a basis for terminating the contract.

### 4. Election of Remedies

■■■■ Compass Bank's assertion—election of remedies—is also an affirmative defense. *France v. Am. Indem. Co.*, 648 S.W.2d 283, 285 (Tex.1983); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 (Tex.1980). When applicable, election of remedies bars the successful assertion of inconsistent remedies, rights, and positions arising out of the same state of facts. *Bocanegra*, 605 S.W.2d at 850. The fact situations in which the election of remedies doctrine may apply are so variable that a single principle underlying the doctrine has not been found. *Id.* at 851. The supreme court has held that an election may constitute a bar to relief when (1) a person successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Id.*

The trial court's findings/conclusions[5] stated that Webb Cooley's prior material

---

**5.** The trial court findings of fact and conclusions of law pertinent to MFP's prior material breach affirmative defense and Compass Bank's election of remedies affirmative defense are as follows:

A party who has materially breached a contract cannot recover on the contract. Thus, Compass Bank cannot recover on its breach of contract claim. (A.11)

MFP's payment obligation under the Settlement Agreement is excused by Webb Cooley's prior material breach. (A.13)

Compass Bank defends against this affirmative defense by arguing that a non-breaching party who elects to treat a contract as continuing, despite a prior breach, will be deemed to have elected a remedy and thus waives the right to rescind the contract and deprives himself of any excuse for ceasing performance on his own part. (A.14)

Compass Bank is precluded from asserting the affirmative defense of election of remedies because Compass Bank did not plead this defense; nor did Compass Bank request a trial amendment; nor was the issue tried by consent. (A.15)

Nevertheless, MFP is not barred from asserting the defense of prior material breach because MFP did not insist on further performance by Webb Cooley, nor did it continue itself to operate under the contract after Webb Cooley's material breach. (A.16)

breach excused MFP from further liability under the settlement agreement. The trial court also found that Compass Bank was precluded from asserting, in response to MFP's affirmative defense of prior material breach, that MFP had elected to treat the settlement as continuing in force and thus waived any breach on Webb Cooley's part. In its first issue, Compass Bank challenges the sufficiency of the evidence supporting the trial court's findings/conclusions regarding election of remedies (except finding/conclusion A.14).

### B. Compass Bank's Failure to Plead Election of Remedies

We first address Compass Bank's attacks on the trial court's finding/conclusion A.15, which states:

> Compass Bank is precluded from asserting the affirmative defense of election of remedies because Compass Bank did not plead this defense; nor did Compass Bank request a trial amendment; nor was the issue tried by consent.

It is undisputed that Compass Bank did not plead election of remedies, nor did it request a trial amendment to do so. Nevertheless, Compass Bank contends finding/conclusion A.15 is in error as a matter of law for three reasons: (1) Rule 94 does not apply to a matter asserted in response to an affirmative defense; (2) MFP failed to plead prior material breach, and therefore rule 94 did not require it to plead election of remedies in response; and (3) the issue of election of remedies was tried by consent.

#### 1. Applicability of Rule 94

> MFP did not treat the Settlement Agreement as continuing after Webb Cooley's material breach. (A.17)
> Additionally, MFP did not elect between two inconsistent remedies so as to constitute manifest injustice. (A.18)

■ Compass Bank contends that rule 94 does not require a party to plead a matter in avoidance to another matter of avoidance or affirmative defense. It asserts that a "defense is a response to a claim for recovery, not a response to a defense." Compass Bank asserts that, because it was the plaintiff below, its contention that MFP elected its remedy as to Webb Cooley's breach is not an affirmative defense, and thus rule 94 did not require Compass Bank to affirmatively plead that contention. We disagree.

■ Rule 94 requires a party "[i]n pleading to a preceding pleading" to "set forth affirmatively" those matters listed in the rule and "and any other matter constituting an avoidance or affirmative defense." TEX.R. CIV. P. 94. Often such matters are asserted by a party opposing a claim for recovery or relief. However, the language of rule 94 makes clear that it requires the pleading of any "matter(s) constituting an avoidance" of any other matter—affirmative claim or defense—asserted in another pleading, regardless of the alignment of the parties. *See id.; see also Royal Typewriter Co. v. Vestal,* 572 S.W.2d 377, 378 (Tex. Civ. App.-Houston [14th Dist.] 1978, no writ). Here, Compass Bank sought to avoid MFP's affirmative defense of excuse by asserting that MFP had elected to waive Webb Cooley's prior material breach. Thus rule 94 required Compass Bank to notify MFP of that assertion by affirmatively pleading election of remedies. We reject Compass Bank's argument to the contrary.

#### 2. Necessity of Pleading

> MFP prevails on the defense of prior material breach. (A.19)

Rule 94 speaks to pleas that must be asserted "in pleading to a preceding pleading." Compass Bank contends that MFP's pleadings did not affirmatively assert that it was excused from performing by Webb Cooley's prior material breach. Therefore, it claims it was not required to plead election of remedies in response.

Compass Bank admits that MFP alleged Compass Bank's claims "fail, in whole or in part, because of a prior material breach of the written agreement between MFP and Webb Cooley, Inc." However, Compass Bank argues the phrase "claims fail" refers to MFP's position that it was entitled to specific offsets against amounts owed to Webb Cooley under the agreement. It asserts that MFP used that phrase several times, and thus that it amounted to mere "boilerplate language" that did not give notice to Compass Bank that MFP was asserting prior material breach as an affirmative defense. Again, we disagree.

The language quoted from MFP's pleadings was sufficiently clear and direct to put the bank on notice that MFP was relying on Webb Cooley's prior material breach in defense of Compass Bank's breach of contract claim, thereby requiring Compass Bank to affirmatively plead election of remedies if it planned to assert that matter in avoidance of MFP's position.

### 3. Trial by Implied Consent

Compass Bank asserts that even if rule 94 required it to plead election of remedies, the issue was tried by implied consent and the trial court erred in concluding to the contrary in its finding/conclusion A.15.

### (a) Applicable Law and Standard of Review

When unpleaded issues are tried by the express or implied consent of the parties, "they shall be treated in all respects as if they had been raised in the pleadings." TEX.R. CIV. P. 67. There is nothing in the record to indicate that election of remedies was tried by express consent. However, if election of remedies was tried by implied consent, Compass Bank's failure to plead that affirmative defense was, in effect, waived. See TEX.R. CIV. P. 90.

Trial by consent is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unpleaded issue. *Mastin v. Mastin,* 70 S.W.3d 148, 154 (Tex.App.-San Antonio 2001, no pet.). It is not intended to establish a general rule of practice and should be applied with care, and never in a doubtful situation. *Id.* Trial by implied consent "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 281 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citation omitted). When evidence relevant to both a pleaded and an unpleaded issue has been admitted without objection, the doctrine of trial by consent should not be applied unless clearly warranted. *Id.*

Whether an issue is tried by consent is a legal conclusion by the trial court, which it reaches by applying rule of civil procedure 67 and the cases interpreting it to the record of the proceedings as a whole. *See Whatley v. City of Dallas,* 758 S.W.2d 301, 306 (Tex.App.-Dallas 1988, writ denied); *see also State Bar of Tex. v. Kilpatrick,* 874 S.W.2d 656, 657–58 (Tex. 1994) (per curiam).[6] To determine wheth-

---

6. *Kilpatrick* is distinguishable from the case before us, but its analysis provides insight on the extent of the trial court's discretion to determine whether an issue was tried by con-

sent. *Kilpatrick* dealt with the trial court's discretion to permit a *trial amendment* where evidence relevant to an unpleaded issue was objected to during trial. *Kilpatrick,* 874

er an unpleaded issue was tried by consent, the trial court examines the record not for evidence of the issue, but rather for evidence of trial of the issue. *Mastin,* 70 S.W.3d at 154. The trial court has broad discretion in determining whether an unpleaded issue was tried by implied consent. *See Whatley,* 758 S.W.2d at 306. Although that discretion is to be exercised liberally in favor of justice, trial by implied consent is the exception, not the rule, and should not be allowed in doubtful cases. *Id.*

### (b) The Record

Compass Bank points to several portions of the record that it contends compels the conclusion that its election of remedies affirmative defense was tried by implied consent, and thus that the trial court abused its discretion in concluding otherwise. Those references consist of briefs and arguments before the trial court, certain testimony elicited by MFP's counsel, and the trial court's finding A.16 on the merits of Compass Bank's affirmative defense.

First, Compass Bank's trial brief discussed cases dealing with a non-breaching party's election between continuing or ceasing performance under a contract after a material breach by the other party. In a response brief, MFP: (1) argued that "a party does not 'continue' a contract by performing the services itself"; and (2) discussed its actions after Webb Cooley's

material breach, asserting that MFP "treated the contract as completed, albeit defectively" and did not insist on any further work by Webb Cooley. The parties also submitted briefing on the issue post-trial (at the request of the trial court). By way of argument in the record below, Compass Bank points us to its opening statements and its and MFP's closing arguments, as well as the trial court's post-trial questioning regarding "continuation of the contract."

Compass Bank also refers to two instances in which MFP's counsel elicited testimony from its witness, MFP's lease accountant responsible for the ad valorem taxes (Christopher Morgan), concerning election of remedies. The first exchange is quoted as follows:

Q: At that time when you received the billing files, when you observed the work that you were then going to have to do in order to determine fees that Webb Cooley was actually entitled to, what were your—what did you believe your options were at that point, sir?

A: Well, our options, at the point—I believed our options at this point were to refuse them and to sue, take the legal avenue, or to redo them and carry on and try to settle this matter out of court.

Q: Why did you refrain from the legal avenue at that point in time?

S.W.2d at 658. The supreme court stated that the trial court *"may* allow the pleadings to be amended and *shall* do so freely when the presentation of the merits will be subserved and the objecting party fails to satisfy the court that the amendment would prejudice that party in maintaining the action or defense on the merits." *Id.* (emphasis original). The court went on to state that a trial court "may not refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face." *Id.* The court added: If the trial amendment is not

mandatory [i.e. involves one of those two situations], then the decision to permit or deny the amendment rests within the discretion of the trial court. *Id.* (citing Tex.R. Civ. P. 66 and *Greenhalgh v. Serv. Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990)).

Here, there was no objection to evidence and no request for a trial amendment. However, if Compass Bank had sought a trial amendment to allege election of remedies, it would have fallen in the "non-mandatory" category, and granting or denying the amendment would have been within the trial court's discretion.

A: Well, I—I felt at the time that Bill [Blankenship, president of Webb Cooley] was living up to his side of the bargain in some respects, especially the fact that he was honoring his agreement with me to waive fees that were uncollectable, to give us offsets for those fees. And we thought that this still—even though it was difficult and even though we felt we were treated very poorly, we felt that we could still work this out somehow if we just kept working at it as hard as we could.

The other exchange is quoted as follows:

Q: Once Webb Cooley delivered the July 2000 billing files to you and you reviewed them, at that point, did you look to Webb Cooley for any other services or assistance?

A: No.

Q: Did MFP insist on any other further performance out of Webb Cooley as of that point in time?

A: No.

### (c) Analysis

■■■■ We have carefully reviewed these portions of the record in light of the applicable standard of review—abuse of discretion. We conclude that although the trial court could have, within the exercise of its discretion, decided that the issue was tried by consent, the record does not compel such a conclusion, and thus that the trial court's decision to the contrary does not constitute an abuse of discretion. The parties' briefing and arguments show that the parties and the trial court were aware of the issue of election of remedies. However, they do not compel the conclusion that the issue was *tried.* Moreover, MFP objected in its post-trial brief that Compass Bank failed to plead election of remedies.[7]

■■■■ "If the record demonstrates that evidence on an issue has been fully developed under circumstances evidencing the parties' understanding that the issue was being decided, then an issue has been tried by consent and the court should allow amendment of the pleadings." *Mo.-Kan.-Tex.R.R. Co. v. Alvarez,* 703 S.W.2d 367, 377 (Tex.App.-Austin 1986, writ ref'd n.r.e.). The evidence elicited by MFP's counsel, which Compass Bank argues compels the conclusion that election of remedies was tried by consent, constitutes the only *evidence* that relates to election of

7. MFP's trial brief was filed after the judgment was signed. Compass Bank argues that MFP waived its objection to the failure to plead election of remedies by failing to object before the judgment, as provided by rule of civil procedure 90. That rule provides, in part:

> Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account....

Tex.R. Civ. P. 90; *see Webb v. Mitchell,* 371 S.W.2d 754, 761 (Tex.Civ.App.-Houston 1963, no writ) ("Where a party files exceptions complaining of defects in pleadings pertaining to matters of substance, it is necessary that he call them to the attention of the trial court before the rendition of judgment, in a nonjury trial, and that he secure an order disposing of the exceptions, if the action taken by the court on the exceptions is not otherwise shown by the record."). However, Compass Bank waived its complaint that MFP failed to comply with rule 90 by failing to bring this complaint to the attention of the trial court. *See* Tex.R.App. P. 33.1. In addition, the record shows that the trial court requested briefing from the parties on the issue of "continuation of the contract." The court stated that it was signing the judgment to "move this case off of dead center" and would consider the parties' briefing after judgment was rendered. Under these circumstances, we conclude that MFP's objection to the lack of pleading was not untimely pursuant to rule 90.

remedies; the record does not show that Compass Bank produced any evidence or testimony on that issue. Thus, there was no conflicting evidence from both parties on the issue. We agree the second exchange between MFP's counsel and Morgan relates to the issue of election of remedies, but this one exchange alone does not show the issue was "actually tried." Further, the evidence elicited in the first exchange was also relevant to an issue set forth in the pleadings—MFP's contention that, after it received defective billing files, it and Webb Cooley reached oral agreements regarding offsets to which MFP was entitled. As such, this exchange does not compel us to conclude that Compass Bank's unpleaded affirmative defense was tried by consent. *See Johnston*, 9 S.W.3d at 281.

▇▇▇ Neither is this conclusion compelled by the trial court's finding/conclusion A.16. As noted earlier, the effect of the conclusion that election of remedies was not tried by consent is that the trial court had no authority to make a fact finding concerning that issue. *See RE/MAX of Tex., Inc.*, 961 S.W.2d at 327–28. Paradoxically, however, the court then went on to enter finding/conclusion A.16 on the very issue it found was not tried:

> Nevertheless, MFP is not barred from asserting the defense of prior material breach because MFP did not insist on further performance by Webb Cooley, nor did it continue itself to operate under the contract after Webb Cooley's material breach. (A.16)

Compass Bank also points to this finding/conclusion in support of its contention that the issue was tried by consent. However, the fact that the trial court, in an apparent "belt and suspenders" approach, made this finding as well does not require us to conclude that the trial court abused its discretion in entering conclusion A.15.

We conclude the record before us does not compel the conclusion that Compass Bank's unpleaded affirmative defense was "fully developed under circumstances evidencing the parties' understanding that the issue was being decided." *Mo.-Kan.-Tex.R.R. Co.*, 703 S.W.2d at 377 (trial by consent justifying allowance of trial amendment). Thus, we conclude that the trial court's conclusion of law that election of remedies was not tried by consent does not constitute an abuse of discretion.

#### 4. Conclusion

It is undisputed that Compass Bank failed to plead election of remedies. Because rule 94 required Compass Bank to plead that matter if it sought to avoid MFP's affirmative defense of prior material breach, and because the record did not compel the trial court to conclude that election of remedies was tried by consent, we conclude the trial court did not abuse its discretion in entering finding/conclusion A.15. Therefore, we resolve Compass Bank's challenge regarding finding/conclusion A.15, as set forth in its first issue, against it.

### C. Alternative Findings/Conclusions on Election of Remedies

As noted above, despite the trial court's conclusion that Compass Bank's affirmative defense was not tried by consent (finding/conclusion A.15), the trial court went on to make findings of fact and conclusions of law regarding whether Compass Bank proved this defense (finding/conclusion A.11, A.13, and A.16 through A.19). Compass Bank's first point also challenges the legal and factual sufficiency of these findings.

We have concluded that the trial court did not abuse its discretion in entering conclusion A.15. However, in the interests of justice and judicial efficiency, we will

consider whether the evidence was legally and factually sufficient to support the remaining findings of fact concerning Compass Bank's election of remedies defense.

### 1. Applicable Law

■ It is a fundamental proposition of contract law that when one party breaches its contract, the other party is put to an election of continuing or ceasing performance, any action indicating an intention to continue will operate as a conclusive choice, not depriving the injured party of his cause of action for the breach which has already taken place, depriving him only of any excuse for ceasing performance on his own part. *Cox, Colton, Stoner, Starr & Co., P.C. v. Deloitte, Haskins & Sells,* 672 S.W.2d 282, 287 (Tex.App.-El Paso 1984, no writ) (citation omitted); *see Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex. 1982); *Houston Belt & Terminal Ry. Co. v. J. Weingarten, Inc.,* 421 S.W.2d 431, 435 (Tex.Civ.App.-Houston [1st Dist.] 1967, writ ref'd n.r.e.).

### 2. Discussion

*(a) Findings/Conclusions A.16 Through A.19*

■ The trial court found:

Nevertheless, MFP is not barred from asserting the defense of prior material breach because MFP did not insist on further performance by Webb Cooley, nor did it continue itself to operate under the contract after Webb Cooley's material breach. (A.16)

MFP did not treat the Settlement Agreement as continuing after Webb Cooley's material breach. (A.17)

Additionally, MFP did not elect between two inconsistent remedies so as to constitute manifest injustice. (A.18)

MFP prevails on the defense of prior material breach. (A.19)

There is evidence that the billing files MFP received in July 2000 contained the lessee information that MFP had supplied to Webb Cooley. However, Webb Cooley's calculations did not properly allocate the tax liabilities to MFP's lessees. Other errors included using the incorrect percentage in calculating Webb Cooley's fee in most of the files and mistakenly including some lessees who had opted out of the service in previous years. Morgan testified that MFP could not use the files Webb Cooley sent to invoice its lessees. MFP "re-created" the files and used its own files to send tax invoices to its lessees.

Further, both Morgan (of MPF) and William Rosenberg, Compass Bank's officer supervising the recovery of Webb Cooley's receivables, testified that the July 2000 invoice was incorrect and should be ignored. Rosenberg testified that the amounts Compass Bank sought were actually the amounts reflected in MFP's billing files, not the amounts calculated in Webb Cooley's billing files. Morgan testified that the October 2000 payment reflected his agreements with Bill Blankenship, who was Webb Cooley's president, with regard to offsets. According to Morgan, the parties' relationship after the settlement agreement included offsets because MFP had billed lessees in states covered by the settlement agreement but had not yet collected those amounts, and, further, lessees could still opt-out, if they chose to do so. Morgan testified that he would not have made the October 2000 payment if Blankenship had said "no deals," that is, if Blankenship had withdrawn his agreement as to offsets.

Morgan further testified that he invoiced lessees for $500,000 and then deducted payments because he and Blankenship discussed waiving certain fees and deducting them against the amount owed, as had been the parties' relationship before the

settlement agreement. He also testified that any amount still owed Webb Cooley after the October 2000 payment was subject to offsets such as penalties and interest from taxes Webb Cooley had not paid before and after January 2000, the date of the settlement agreement. Moreover, as noted above, Morgan answered "no" to the question whether MFP looked to Webb Cooley for "other services and assistance" after delivery of the July 2000 billing files and whether MFP insisted on "any other further performance" from Webb Cooley "as of that point in time." MFP's re-creating of the billing files, which was Webb Cooley's performance obligation under the settlement agreement, is an act that is inconsistent with the settlement agreement. Thus, there is some evidence supporting the trial court's finding that MFP did not insist on further performance by Webb Cooley, nor did it continue itself to operate under the settlement agreement after Webb Cooley's material breach of sending unusable files. *Cf., e.g., Hanks,* 644 S.W.2d at 708–09 (company retained assets of business and continued operation, pursuant to sales contract, after party breached covenant not to compete, thereby waiving right to partially rescind contract). There is also some evidence supporting the trial court's findings that MFP did not treat the settlement agreement as continuing after Webb Cooley's breach. *Cf. id.; Houston Belt & Terminal Ry. Co.,* 421 S.W.2d at 434–35 (parties continued to perform track maintenance contract by repairs and payment, despite argument contract rescinded). In addition, there is some evidence supporting the finding that MFP did not elect between two inconsistent remedies, that is, continuing or ceasing performance, so as to constitute manifest injustice. *See Bocanegra,* 605 S.W.2d at 851; *Hanks,* 644 S.W.2d at 708–09.

Nevertheless, Compass Bank argues that the evidence is undisputed that MFP chose to continue the contract after receiving the billing files in July 2000. First, Compass Bank argues that Morgan's testimony regarding MFP's decision to "carry on" after receiving the billing files (quoted above) is an admission that MFP continued the contract. However, we conclude that this testimony refers to MFP's decision to wind up its relationship with Webb Cooley by redoing the files, billing lessees, calculating Webb Cooley's fee pursuant to the 1995 agreement, and seeking Blankenship's agreement for any offsets. MFP's decision after the breach was not restricted to either suing Webb Cooley or continuing under the settlement agreement. Instead, the evidence shows that MFP decided not to sue for breach of the settlement agreement but to wind up its relationship with Webb Cooley pursuant to oral agreements.

Second, Compass Bank argues that the October 2000 payment is evidence that MFP continued the contract by paying Webb Cooley under the terms of the settlement agreement. Specifically, Compass Bank relies on: (1) the $163,177.22 payment itself; (2) Exhibit 78, which is the statement of the amount that accompanied the October 2000 payment, that showed Webb Cooley's fees less the offsets claimed by MFP and that stated specifically that MFP still owed Webb Cooley about $130,000 after the October 2000 payment; (3) Stipulation 32, which states that "[t]he revised billing files prepared by MFP . . . and the "Adjusted Fees Outstanding" column of [Exhibit 78] . . . accurately reflect the fees owed to Webb Cooley on behalf of each lessee . . ."; and (4) MFP billed its lessees $574,896.60 for Webb Cooley's fees and collected those fees.

However, the evidence showed that none of the fees were calculated based on Webb Cooley's billing files; rather, all amounts were calculated by MFP based on its own

work in recreating the billing files. For example, Morgan testified that the October 2000 payment included states not covered by the settlement agreement for which Webb Cooley had delivered billing files. Morgan also testified that the payment included offsets agreed to by Blankenship and that any future payment would have been subject to further offsets, as well as penalties and interest. Specifically, Morgan testified that after deducting offsets, penalties, and interest, the amount owed Webb Cooley was a negative number. Moreover, we note that the money MFP collected as Webb Cooley's fee was not a payment by MFP to Webb Cooley for any work on the billing files pursuant to the settlement agreement; rather, those fees were invoiced pursuant to the 1995 fee-for-savings agreement. Thus, there was some evidence that Exhibit 78 was not a record of payments due under the settlement agreement. *Cf. W. Irrigation Co. v. Reeves County Land Co.,* 233 S.W.2d 599, 602–03 (Tex.Civ.App.-El Paso 1950, no writ) (by paying for wells under contract, party chose to continue contract, thus depriving it of excuse for ceasing performance). Further, there was some evidence that MFP did not receive or retain any benefit from Webb Cooley under the settlement agreement.

Third, Compass Bank argues that MFP benefited from the settlement agreement because it knew in January 2000 that it intended to offset the payment to a certain lessee, Marathon, as reflected on Exhibit 78 as an offset from the amount of Webb Cooley's fees. However, Morgan testified that the deduction for Marathon reflected his agreement with Blankenship, after the settlement agreement, to take the offset because Marathon was owed a refund for taxes paid in 1998 and earlier, and Webb Cooley chose to take a deduction from the payment rather than pay Marathon directly. Thus, we conclude, contrary to Compass Bank's argument, that the Marathon offset had nothing to do with the settlement agreement and is, instead, some evidence that MFP did not benefit from the settlement agreement.[8]

We conclude that some evidence supports the trial court's findings/conclusions A.16 through A.19. Therefore, we reject Compass Bank's argument that it established its defense as a matter of law. Moreover, after reviewing all the record evidence pertinent to these issues, we conclude the evidence is factually sufficient to support these findings/conclusions. Therefore, we resolve Compass Bank's first issue against it to the extent it challenges findings/conclusions A.16 through A.19.

### (b) Finding/Conclusion A.13

Next, Compass Bank challenges the sufficiency of the evidence supporting finding/conclusion A.13, that MFP's payment obligation under the settlement agreement is excused by Webb Cooley's prior material breach. Compass Bank argues that MFP's payment obligation was not excused because it chose to continue the contract after it knew the state of the billing files delivered in July 2000, and relies on the same evidence we have reviewed under our analysis of findings/conclusions A.16 through A.19. We have already rejected Compass Bank's argument that the evidence shows as a matter of law that MFP continued the contract. Accordingly, we reject Compass Bank's argument that this same evidence is insufficient to

8. Compass Bank also argues that MFP sued Compass Bank for declaratory judgment under the settlement agreement, seeking offsets against amounts owed under the settlement agreement. However, the record shows that the trial court dismissed MFP's declaratory judgment because it was a "mirror image" of Compass Bank's case, that is, it was identical to MFP's affirmative defenses.

support finding/conclusion A.13. Therefore, we resolve Compass Bank's first issue against it to the extent it challenges finding/conclusion A.13.

### (c) Finding/Conclusion A.11

Finally, Compass Bank challenges finding/conclusion A.11, that a party who has materially breached a contract cannot recover on the contract, and, thus, Compass Bank cannot recover on its breach of contract claim. Compass Bank's argument is premised on MFP's continuation of the contract. We have rejected that argument. Moreover, it is undisputed that Webb Cooley committed a prior material breach of the settlement agreement. Accordingly, we resolve Compass Bank's first issue against it to the extent it challenges finding/conclusion A.11.

### CONCLUSION

We conclude the trial court did not err in denying Compass Bank's untimely motion for new trial, and therefore overrule its eighth issue. We also conclude the trial court did not err in holding that Compass Bank was precluded from asserting election of remedies as an affirmative defense in response to MFP's defense of prior material breach. Further, in the interests of judicial economy, we conclude the evidence was legally and factually sufficient to support the trial court's findings against Compass Bank with respect to that election of remedies defense. Therefore, we overrule Compass Bank's first issue.

Because of our disposition of Compass Bank's first and eighth issues, we need not address Compass Bank's remaining issues, in which it attacks the trial court's findings on the defenses of laches, estoppel, waiver, ratification, and offsets. We affirm the trial court's judgment.