**Opinion issued December 20, 2012**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00786-CV

_____

**AVASTHI & ASSOCIATES, INC., Appellant**

**V.**

**SHARMA DRONAMRAJU, Appellee**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-07949**

## MEMORANDUM OPINION

This is a breach-of-contract case. Defendant/Appellant Avasthi &

Associates, Inc. appeals from a judgment entered on the jury's verdict in favor of

Plaintiff/Appellee Sharma Dronamraju. We affirm.

**BACKGROUND**

Avasthi & Associates (A&A) is a petroleum consulting company that provides worldwide integrated consulting services in the areas of engineering, enhanced oil recovery, geoservices, and unconventional resources development. Depending on the scope of a particular client engagement, A&A in turn enters consulting agreements with various professionals, such as geologists, petrophysicists, geophysicists, civil engineers, and production engineers to work on the project.

Dronamraju is a geologist. In 2007 and 2008, A&A was working on a multi-phased project related to the Puesto Molina Norte field in Argentina for A&A's client, Repsol. This was a fixed-price contract. Partway through this project, the geologist that A&A had been utilizing became unavailable because he was working on a project for another company. A&A advertised in a Houston industry publication its need for a geologist to take his place. Dronamraju responded, and A&A eventually contracted with him to perform geological services during part of the project's "visualization phase"—a phase running from March 2007 to March 2008.

**A. The Written Agreements**

On June 8, 2007, A&A and Dronamraju executed a 16-page Master Services Agreement (MSA). The MSA contained provisions generally governing

2

Dronamraju's consulting work for A&A's clients, and it contemplated a separate Work Directive Form would be executed governing work on specific projects. That same day, the parties executed a Work Directive Form containing provisions specific to the Repsol Puesto Molina Field Project.

Relevant to this case, Section 3 of the MSA contains provisions setting forth how Dronamraju should report his time and bill A&A for his services and when A&A would make payment on his invoices:

3.1 Based on the information furnished by A&A to CONTRACTOR, CONTRACTOR agrees to provide A&A time & cost required for any consulting work requested by A&A. CONTRACTOR also agrees to provide whatever additional information is required by A&A, including, but not limited to, most probable and maximum possible time & cost required for any consulting assignment, and timeline with milestones for tracking the assignment progress.

3.2 CONTRACTOR and A&A will agree to time & cost required for any consulting work requested by A&A or its Clients, in writing, prior to any work is performed by CONTRACTOR for A&A or its Clients.

3.3 CONTRACTOR agrees to submit a weekly time report to A&A (in a format provided by A&A to CONTRACTOR) on Sunday, by noon, for any consulting work performed by CONTRACTOR during the previous week (Sunday through Saturday) under this Agreement. The purpose of this weekly time report is not so that A&A can, in any way, monitor CONTRACTOR's work; rather it is for the purpose of A&A's promptly billing A&A's Clients pursuant to agreements that may exist between A&A and its Clients.

3.4 CONTRACTOR agrees to submit monthly invoice by 3rd ·of the month for any consulting work performed by CONTRACTOR during the previous month, and, as full and complete consideration for consulting work performed by CONTRACTOR, A&A agrees to pay CONTRACTOR's invoice within fifteen (15) days of A&A receiving payment from its Client for invoice submitted by A&A for consulting

3

work performed. A&A has written agreements with its Clients for payment of A&A's invoices for consulting work performed within thirty (30) days after receipt of its invoices by its clients.

The Work Directive Form contained similar provisions:

**Contractor's Weekly Time Report:** Submit to A&A by e-mail on Sunday by noon (in the format provided by A&A), for work done and time billed during the previous week (Sunday through Saturday).

**Contractor's Monthly Invoice:** Submit to A&A by 3rd of the month (in the format provided by A&A), for the time billed during the previous month, by e-mail; and **the signed invoice by mail or e-mail or fax.**

**Contractor's Monthly Expense Report:** Submit to A&A, along with monthly invoice, by 3rd of the month (in the format provided by A&A), by e-mail; and with **copies of the receipts of the expense items, by mail or e-mail or fax.**

**B. Parties' Dealings**

Dronamraju worked at home on the Repsol project and participated in four in-office client meetings/presentations at different peer-review stages of the project—in July 2007, October 2007, December 2007, and February 2008. It is undisputed that, during the ten months that Dronamraju worked for A&A on this project, he never timely complied with the reporting or billing requirements.

**1. June 2007-October 2007 work**

For his June 2007 through October 2007 time, Dronamraju usually submitted his time sheets and invoices between a "few days" and a "couple of weeks" late. At least once, they were submitted a month late. Dronamraju's bills contained two categories: (1) his hourly billing for the month, and (2) the cost of

4

licensing Petrel software (software required for the work Dronamraju was performing). A&A generally reimbursed Dronamraju for the Petrel license before paying for his billed time.[1] Although A&A sometimes paid Dronamraju later during this period than provided for by the parties' contract, it is undisputed that A&A eventually paid Dronamraju in full for his June 2007 through October 2007 time.

Several emails from Jay Avasthi to Dronamraju were introduced into evidence showing that Dronamraju was reminded repeatedly that he needed to report and invoice more timely, but never told that his failure to timely invoice would result in nonpayment. On December 7, 2007, Avasthi sent Dronamraju an email stating that his past due reports and billing for October and November 2007 needed to be submitted "ASAP, if you want timely payment." Four days later, Dronamraju submitted his October timesheets and invoice and said that he was "working on November-December Invoice and I will forward that in a couple of days." He did not do so.

### 2. November 2007-February 2008 work

On November 12, 2007, Dronamraju sent an email to Jay Avasthi detailing his November work to date. Early December emails between the two discussed

---

[1] The Petrel license continued to be renewed by Dronamraju through the end of February 2008, and A&A has fully reimbursed him for that expense, so that part of Dronamraju's invoices is not at issue here.

Dronamraju's work leading up to the presentation of Dronamraju's analysis at the December peer-review client meeting and, on December 7, 2009, Jay Avasthi approved Dronamraju's licensing Petrel software for another month to continue working on the Repsol project. A&A later approved extending that license through February 2008.

There were several emails between the parties in January and February discussing Dronamraju's ongoing work for the final February peer-review meeting on the Repsol project. On February 11, 2008, Avasthi sent an email to Dronamraju reminding him that he had not yet submitted signed invoices for November and December 2007, or January 2008, or his expense reports for those time periods. In response, Dronamraju submitted invoices for the Petrel software licensing, but not his hourly time.

On April 27, 2008, Dronamraju sent an email to Avasthi explaining that his computer hard drive had crashed, and that he was thus recreating some work and records. In that email, he requested that A&A send him checks for his November and December Petrel software reimbursements, and stated, "I know that I have not filed the invoices for time. I am working on invoices." The next day, in response to an email from Dronamraju requesting updated password information for A&A's system, Jay Avasthi responded that access was provided for "active project team members only." On May 2, 2008, Dronamraju replied that he was sorry to hear

6

that he was "not a part of A&A team anymore," and noted that, "Soon I will be sending invoices from November-February, as I restored my hard drive."

On July 13, 2008, Dronamraju sent an email to Avasthi asking if A&A had any record of receiving invoices from him for the November 2007–February 2008 time period, and explaining that "I do have to claim quite a bit of time" on the Repsol project. A&A responded that it had "no record of receiving any timely daily reports, weekly reports, or monthly invoices for the months of November and December 2007, January and February 2008."

On July 28, 2008, Dronamraju sent an email to Jay Avasthi apologizing for lapsing on his billing periods, which he attributed to his prioritizing delivery of work product and his computer problems. He attached to that email his November timesheets and invoice, and noted that he was working on his other bills. On September 4, 2008, A&A's legal counsel sent a letter to Dronamraju stating that because his report and invoice for November 2007 was submitted eight months late, A&A would not pay for his time. The letter noted that the A&A had completed the Repsol project, submitted its final bill, and closed the file.

In a December 7, 2008 email, Dronamraju stated that he has "timesheet claims which [are] lagging behind. I sent a November Invoice. I still have to send you December-March invoices. . . ." On December 29, 2008, Dronamraju submitted his weekly time reports and final invoices for December 2007–March

7

2008. A&A's legal counsel again sent a letter stating that these bills were submitted too late and would not be paid.

### 3. Trial Court Proceedings

Dronamraju sued A&A for breach of contract, seeking payment of his unpaid bills and attorneys' fees.

At trial, Dronamraju and Jay Avasthi testified. Dronamraju acknowledged that he had not timely reported his activities or invoiced his time. He contended, however, that the amount of work he was doing during the disputed period was no surprise to A&A, as the entire project had heated up at the end of 2007 and the team was under a time-crunch. He testified that he was never informed that A&A would not pay him for late-billed work, even though he spoke with Avasthi daily by phone and email through that period. Ultimately, he attributed his late billing to (1) his focusing on creating work product, (2) his computer problems, and (3) his getting too busy with other clients' work.

In his testimony, Jay Avasthi explained the importance of receiving timely work sheets from A&A's consultants such as Dronamraju. Weekly time sheets and monthly invoices were A&A's only method of tracing how much was being spent on its fixed-price contract with Repsol, which was important to keeping up with whether the project was profitable or not. Avasthi stated that Dronamraju's failure to timely bill in November and December deprived A&A of the information it

8

needed to decide whether to keep using Dronamraju on the Repsol project or replace him with someone else.

Avasthi agreed that Dronamraju had done all the work requested of him on the Repsol job, and that the geological services Dronamraju provided were necessary to completing the project. While he posited that another geologist might have completed the work for less hours or money, he acknowledged that it may have cost the same and testified that he was not prepared to say that Dronamraju's time billed to the project was excessive. Avasthi testified that he did not expect Dronamraju to work for free, but that he had no idea how much time Dronamraju was planning to bill.

**C. The Jury's Verdict and the Court's Judgment**

In response to two questions, the jury found that A&A, but not Dronamraju, breached the parties' agreement, and that Dronamraju did not waive his right to seek compliance by A&A:

**QUESTION NO. 1**

Did Avasthi fail to comply with the Agreement?

> Failure to comply by Avasthi is excused if compliance was waived by Sharma Dronamraju.
>
> Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer:     Yes

9

# QUESTION NO. 2

Did Sharma Dronamraju fail to comply with the Agreement?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

a. The extent to which the injured party will be deprived of the benefit which he reasonably expected;

b. B. the extent to which the injured party can adequately be compensated for the part of that of which he will be deprived;

c. The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d. The likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances indicating any reasonable assurances.

Failure to comply by Sharma Dronamraju is excused if compliance was waived by Avasthi.

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer:      No

Because the jury found that Dronamraju did not fail to comply with the agreement, it did not reach the question of who breached the agreement first. It awarded Dronamraju $70,265 in past damages and $29,452 in attorneys' fees.

The court denied A&A's motion for judgment notwithstanding the verdict and entered judgment on the jury's verdict. A&A's motion for new trial was overruled by operation of law.

# ISSUES ON APPEAL

A&A advances the following five issues on appeal, all premised on the argument that Dronamraju's failure to timely submit invoices to A&A was a prior material breach that relieved it of its obligation to pay Dronamraju:

(1) "The trial court erred when it signed a judgment in favor of Dronamraju instead of a take-nothing judgment in favor of A&A because—as a matter of law—there was a prior material breach of the Contract by Dronamraju which excused A&A from performing under the Contract (i.e., from paying Dronamraju under the Contract)."

(2) "The trial court erred when it denied A&A's motion for directed verdict on the prior material breach issue."

(3) "The trial court erred in overruling A&A's objection to the submission of a jury question on breach of contract as to A&A (because of the prior material breach issue)."

(4) "The trial court erred in denying A&A's motion for judgment notwithstanding the verdict and motion to disregard a jury finding and instead signing the Final Judgment based on the jury verdict because—as a matter of law—there was a prior material breach of the Contract by Dronamraju which excused A&A from performing under the Contract (i.e. from paying Dronamraju under the Contract)."

(5) "The trial court erred when it denied (by operation of law) A&A's motion for new trial because — as a matter of law — there was a prior material breach of the Contract by Dronamraju under the Contract)."

In response, Dronamraju argues that we should affirm the trial court's judgment because (1) his failure to timely submit bills to A&A was "not a material breach" and, alternatively, (2) A&A's "request for additional services . . . . after his failure to timely invoice waived the materiality of the prior breach."

11

## STANDARDS OF REVIEW

When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Such a no-evidence challenge will be sustained when "'(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.'" *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

In our legal-sufficiency review, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). Nonetheless, "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. . . .[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary

evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

If more than a scintilla of evidence supports the jury's finding, "the jury's verdict . . . must be upheld." *Miller*, 102 S.W.3d at 709. "[M]ore than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Havner*, 953 S.W.2d at 711). Conversely, evidence that is "'so weak as to do no more than create a mere surmise'" is no more than a scintilla and, thus, no evidence. *Id.* (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In reviewing a factual-sufficiency challenge to a finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the judgment only if the evidence that supports the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must examine both the evidence supporting and that contrary to the judgment. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Under either type of sufficiency challenge, the jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *City of Keller*,

13

168 S.W.3d at 819. Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict. *Id*. at 820.

## THE PARTIES' ARGUMENTS

A&A argues that, as a matter of law, it was "excused from performing under the Contract (i.e. from paying Dronamraju) because of a prior material breach of the same Contract by Dronamraju." According to A&A, the "material facts of this case are indistinguishable from *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004)," a case in which "the Supreme Court of Texas recognized that material breach is established as a matter of law when a party fails to timely perform and timeliness is a material element of the contract."

In response, Dronamraju argues that "*Mustang Pipeline* is distinguishable from this case in several important respects": (1) it "dealt with the timeliness of *performance* of a construction contract and not the timeliness of billing," and (2) "the contract in *Mustang Pipeline* clearly provided that performance of the contract (not billing) in a timely manner was of the essence." According to Dronamraju, this case is instead governed by three cases in which this Court has held that a failure to timely bill was not a material breach under the guidelines of *Mustang Pipeline*. *See Williams v. Jackson*, No. 01-07-00850-CV, 2008 WL 4837484, at *4 (Tex. App.—Houston [1st Dist.] Nov. 6, 2008, no pet.); *Crane v. Rimkus*

14

*Consulting Grp., Inc.*, No. 01-09-00662-CV, 2011 Tex. App. LEXIS 539 (Tex. App.—Houston [1st Dist.] January 13, 2011, no pet.); *Harris Cnty. Util. Dist. No. 16 v. Harris Cnty. Mun. Dist. No. 36*, No. 01-10-00042-CV, 2011 WL 3359698, at *9 (Tex. App.—Houston [1st Dist.] Aug. 4, 2001, no pet.).

Alternatively, Dronamraju asserts that "there is clear evidence that Appellant waived the materiality of the breach by continuing to request that Appellee perform services under the contract and by treating it as still existing even after the alleged material breach." In its reply brief, A&A argues that Jay Avasthi's sending repeated emails to Dronamraju reminding him of his reporting responsibilities shows that A&A did not waive its right to receive timely invoices. Moreover, A&A contends, accepting the argument that its requesting that Dronamraju continue working on the project after he failed timely submit invoices constituted a waiver would lead to an absurd result in that Dronamraju could have waited even decades to submit the past-due bills.

## WAIVER

We conclude that regardless of whether the failure to timely bill was material, there is legally and factually sufficient evidence that A&A waived the timely billing requirement by electing to continue under the contract. We thus affirm the trial court's judgment.

15

**A. Applicable Law**

A party establishes waiver by demonstrating (1) the express renunciation of a known right or (2) silence or inaction for so long as to show the intent to yield a known right. *See Motor Vehicle Bd. v. El Paso Indep. Auto Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999). Waiver can also result from acts that induce the other party to believe that the party will not insist on exact performance within the contractual time limits. *See Kennedy Ship & Repair, LP v. Pham*, 210 S.W.3d 11, 20 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also KMI Cont'l Offshore Prod. Co. v. ACF Petrol. Co.*, 746 S.W.2d 238, 243 (Tex. App.—Houston [1st Dist.] 1987, writ denied) ("[A] waiver can occur if a party knowingly possessing the right acts in such a manner that the party misleads the opposing party into believing that a waiver has occurred."); *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. Civ. App.—Amarillo 1981, writ ref'd n.r.e.). Ordinarily waiver is a fact question; however, we decide a waiver issue as a matter of law if the facts and circumstances are admitted or established. *See El Paso Indep. Auto Dealers*, 1 S.W.3d at 111.

"It is a fundamental proposition of contract law that when one party breaches its contract, the other party is put to an election of continuing or ceasing performance, any action indicating an intent to continue will operate as a conclusive choice, not depriving the injured party of his cause of action for the

16

breach which has already taken place, depriving him only of any excuse for ceasing performance on his own part." *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 858 (Tex. App.—Dallas 2005, pet. denied); *see also Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982) ("A party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part.").

### B. Analysis

A&A relies on *Mustang Pipeline Co.* for the proposition that if Dronamrajo's failure to timely bill was a material breach, A&A is relieved of its contractual obligation to pay him for his work. But, as we recently explained, the "principle of law stated in *Mustang Pipeline* . . . —that 'when one party to a contract commits a material breach of that contract, the other party is discharged or excused from future performance'—applies only so long as the parties do not treat the contract as continuing in effect, as they did here." *Henry v. Masson*, 333 S.W.3d 825, 842 n.3 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting *Mustang Pipeline Co.*, 134 S.W.3d at 196).

It is undisputed that Dronamraju failed to comply with the contractual provisions governing the reporting of, and billing for, his time. Assuming for purposes of our analysis that amounted to a material breach, A&A was then required to "elect between two courses of action—continuing performance under

17

the contract or ceasing to perform." *Id*. at 840 (citing *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 757 n.7 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)).  Such "election affects only whether the non-breaching party is required to perform fully after the breach." *Id*.  A&A's seeking to continue benefiting from the contract by requesting Dronamraju continue performing work "operate[d] as a conclusive choice depriving [A&A] of an excuse for [its] own nonperformance." *Id*. at 841; *see also Hanks*, 644 S.W.2d at 708 (holding that by choosing to treat contract for sale of business as continuing after other party's breach of covenant not to compete and by retaining all assets of business and continuing its operation, non-breaching party waived any right it had to partially rescind contract).

Upon choosing to continue the contract, A&A did not waive any claim it had for damages flowing from Dronamraju's breach (which it never asserted), or any defense it had to Dronamraju's breach-of-contract claim (such as waiver by Dronamraju, which was submitted to, and rejected by, the jury).  *E.g.*, *Compass Bank*, 152 S.W.3d at 858.  By continuing the contract it did, however, waive its ability to rely upon Dronamraju's earlier breach to excuse its own performance.

The undisputed evidence that A&A continued seeking benefits under its contract with Dronamraju after Dronamraju breached the contract is legally and factually sufficient to support the jury's verdict under the theory of waiver. Because A&A's five issues are all premised upon its argument that its performance

18

was excused, and because we conclude that A&A waived its ability to treat Dronamraju's breach as a justification for non-performance, we overrule A&A's five issues.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.