# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00135-CV

**Earthkeepers, LLC and Paramdeep Dhody, d/b/a Spiritual Urban Warrior, Appellants**

**v.**

**Albert Zee Haag, Austin Bargain Centers, Inc. d/b/a Natures Treasures of Texas, and Karen Richards, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-10-002374, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Earthkeepers, LLC and Paramdeep Dhody appeal from the trial court's judgment in favor of appellees Albert Zee Haag, Austin Bargain Centers, Inc. d/b/a Natures Treasures of Texas (ABC), and Karen Richards. In five issues, appellants challenge rulings by the trial court and the jury's findings. For the reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

Paramdeep Dhody met Karen Richards at her store ABC in 2005. After talking with Richards about a certain type of quartz crystals known as "Earthkeepers," Dhody purchased from ABC the "Concordance Collection," a collection of Earthkeepers. ABC purchased the collection from appellee Albert Zee Haag before selling it to Dhody. The term "Earthkeepers" was coined in the 1980s by Katrina Raphaell, a well-known figure in the metaphysical community and authority

on Earthkeepers. Raphaell described Earthkeepers as quartz crystals with purported metaphysical healing properties.

After Dhody purchased the Concordance Collection, he formed Earthkeepers LLC. Dhody was its sole member and developed a business plan that included "cornering the market" on Earthkeepers. Different ideas for his business plan included selling the stones for a profit, making products, such as crystal balls or jewelry, out of the stones for resale, or displaying the stones at a retreat center.[1] As part of his plan, Dhody entered into an "Agreement to Purchase" with ABC in January 2006. The parties agreed to a price per pound for stones from a particular mine in Namibia, Africa. The agreement stated in relevant part:

> No less than 150,000 and no more than 170,000 pounds of quartz crystals with mixed other minerals. . . . Total value of this agreement is no greater than $640,900.00 (170,000 lbs x $3.77). This crystal is from the Ojua Mine, Namibia, also known as Earthkeeper Quartz hereinafter referred to as EK.
>
> Buyer has the right to select approximately 67,000 pounds ($3.77 per lb. cost) from the above noted lot of EK to be delivered by Seller . . . no later than April 1, 2006.
>
> Buyer has the first right of refusal on all the EK's described above and can exercise his right to purchase in full within one year from the date of this contract; provided, however, another good faith payment of no less than one half of the additional balance that is taken is received no later than January, 2007 with the balance paid no later than July 2007. Should Buyer choose to take only 67,000 lbs, selection will be limited to quartz only in the containers containing said EK received February 2006 at "Zee's" non-inclusive of any tourmaline, amethyst or other gems in Zee's yard.
>
> There is no buyback offer in this agreement.

---

[1] Because the parties dispute whether the materials delivered were actual "Earthkeepers" and refer to them inconsistently, we refer to them as stones.

The agreement also provided that "Seller disclaims any implied warranty of condition, merchantability or fitness for a particular purpose" and that the "goods being in their present condition 'as is' as represented in photo book previously provided by [Haag]." ABC purchased the stones from Haag and then sold them to Dhody under the terms of the agreement. As of May 2006, Dhody had paid approximately $625,000 for more than 186,000 pounds of stones.

Dhody agreed to additional purchases from ABC at the end of May 2006 (between 44,000 and 55,000 pounds for $120,000) and in July 2006 (150,000 pounds minimum for $150,000).[2] Dhody paid the amounts owed for the additional purchases, but he did not take delivery of all of the stones that he purchased. Haag stored some of the stones for Dhody in Haag's yard in Tucson, Arizona, and some stones remained in storage in Africa. Dhody also entered into a separate transaction directly with Haag in 2007 to purchase "negative entropy" crystals for approximately $67,000. Dhody paid Haag directly for the crystals, without going through ABC, but he did not take possession of them. As with some of the stones, Haag stored the crystals for Dhody in Haag's yard.

Although the parties continued to communicate about the transactions and Dhody's business plans, Dhody's plans for the stones did not materialize. By 2010, Dhody was unhappy with the progress of his business plans and with Richards and Haag. Among his complaints, Dhody sought a refund from Haag of the amount that he paid Haag for the negative entropy crystals, but Haag and Dhody were unable to reach an agreement.

---

[2] Haag's offer for the May transaction, as stated in an email dated May 26, 2006, was that he would "sell the material that is mostly quartz . . . for the sum of [$]120,000 for 44,000 lbs with the Museum rock quartz include[d], I will charge you 120k for 44,000 lbs but will deliver 52,000 lbs or more of quartz. (depending on overages) I will add a few nice malachite boulders to fill out the loads." The July 2006 transaction was to purchase remaining stones from the mine in Africa.

In July 2010, appellants sued Haag, Richards, and ABC based on the Earthkeepers transactions, as well as the negative entropy crystals transaction. Appellants' claims included fraud, breach of contract, breach of fiduciary duty, breach of express and implied warranties, violations of the Deceptive Trade Practices Act (DTPA), negligence, and negligent misrepresentation. In May 2011, Dhody took possession of the remaining stones from the Earthkeepers transactions that Haag had been storing in his yard for Dhody. Dhody, however, left the negative entropy crystals in Haag's yard and approximately 150,000 pounds of stones in storage in Africa.

In April 2012, the trial court granted a partial no-evidence summary judgment against appellants as to their fraud and certain DTPA claims asserted against Richards and ABC. Appellants' remaining claims proceeded to jury trial in October 2012. The primary factual disputes at trial were the quality and quantity of stones that Dhody purchased in the Earthkeepers transactions. Dhody's theory at trial was that he was duped into buying "rocks" of low value and that he only received a few true "Earthkeepers." He also contended that appellees failed to provide him with promised contacts, endorsements, and other assistance. Appellees' theories included that Richards was acting as a retailer and Haag as a wholesaler and nothing more, that Dhody had unreasonable expectations, and that he received more weight than he paid for in the Earthkeepers transactions.

Dhody, Richards, and Haag testified at trial. Appellants also called Jean Kruse Blasingame, a consultant and personal assistant to Dhody, and Vandell King, an expert who appraised the value of the stones purchased by Dhody in the Earthkeepers transactions. King valued the stones well below what Dhody paid for them, but he assigned no value to the stones that remained in Africa and did not add any value for the stones' purported metaphysical properties.

4

Blasingame testified about the process in May 2011 of obtaining the remaining stones that were still in Haag's yard from the Earthkeepers transactions. She also testified about photographs and the weights of some of the stones. It was undisputed that Haag had not weighed all of the stones that he owned.

Much of the testimony at trial focused on emails that the parties exchanged from 2005 to 2010. Relying on various emails to support their respective positions, the parties provided different accounts of the scope of the parties' relationships and agreements surrounding the Earthkeepers and negative entropy crystals transactions. The evidence, however, was undisputed that the negative entropy crystals transaction was directly between Haag and Dhody and that ABC and Richards did not receive compensation for that transaction. It was also undisputed that ABC's compensation for the Earthkeepers transactions was the difference between what Dhody paid ABC and what ABC paid Haag. The total amount that ABC received for those transactions was disputed, but ABC and Richards did not receive any compensation for those transactions after 2006, although Richards continued to try to help Dhody with his business plans until 2010.

The trial court directed a verdict on the fraud claims against Haag and claims against all of the defendants with two-year limitations periods and refused to submit the breach of fiduciary duty claim against Richards to the jury. The trial court submitted the case to the jury under appellants' remaining breach of contract claims. The jury found that Haag did not fail to comply with "the agreement, if any with Mr. Dhody," that Richards did not fail to comply with "her written agreement with Mr. Dhody," and that Richards did not fail to comply with "an agreement, if any, other than the written agreement with Mr. Dhody." The trial court entered judgment on the jury's

5

verdict, and appellants filed a motion for new trial, which motion was overruled by operation of law. This appeal followed.

## ANALYSIS

Appellants raise five issues on appeal.  In their first four issues, they assert that the trial court erred when it:  (i) granted no-evidence partial summary judgment as to certain claims against Richards and ABC; (ii) refused to submit Dhody's breach of fiduciary duty claim against Richards to the jury; (iii) directed verdict on the fraud claims against Haag; and (iv) directed verdict on claims against all defendants based on limitations grounds.  In their fifth issue, appellants contend that the jury's findings were against the great weight and preponderance of the evidence.

**Did the trial court err by granting partial summary judgment in favor of Richards and ABC?**

In their first issue, appellants challenge the trial court's order granting partial summary judgment in favor of Richards and ABC as to appellants' claims based on fraud and some of their DTPA claims.[3]  Appellants alleged misrepresentations and non-disclosure about the quality

---

[3]  In its order, the trial court granted the no-evidence summary judgment motion of Richards and ABC as to the following claims:

1.  Plaintiff's fraud claims, including fraudulent misrepresentation and fraud by nondisclosure;
2.  Plaintiff's claims of unconscionable action or course of action under the DTPA; and
3.  Plaintiff's claims that Defendants engaged in false, misleading, or deceptive acts or practices by failing to disclose information and by making misrepresentation as enumerated in section 17.46(b) of the DTPA.

The trial court also sustained objections to the affidavit of Vandell King and did not admit it as summary judgment evidence but otherwise denied the summary judgment motion, including as to DTPA claims based on breach of warranty.  Richards and ABC also sought traditional summary

and quantity of stones purchased from ABC and other misrepresentations about promised contacts, endorsements, and other assistance. Appellants' DTPA claims included allegations of false, misleading or deceptive acts, failure to disclose, and unconscionable conduct. *See* Tex. Bus. & Com. Code §§ 17.45(5) (defining "unconscionable action or course of action"), .46(b) (listing "false, misleading, or deceptive acts or practices"). Appellants urge that more than a scintilla of evidence existed on each of the contested elements of these claims.

**Standard of Review**

We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant seeking a no-evidence summary judgment must assert that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* When reviewing a no-evidence summary judgment, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)).

judgment and no-evidence summary judgment as to other claims.

**Fraud Claims**

In their motion for summary judgment, Richards and ABC asserted that there was no evidence of the elements of falsity and recklessness to support appellants' fraud claims based on misrepresentations. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (listing elements of fraudulent misrepresentation claim to include that representation was false and that defendant knew it was false when made or made it recklessly without any knowledge of the truth and as a positive assertion); *see also Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) (listing elements of fraud claim). They also asserted that there was no evidence that Richards and ABC were aware of facts they failed to disclose or that they knew that appellants were ignorant of these facts and lacked an unequal opportunity to uncover them as to appellants' fraud claims based on nondisclosure. *See Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (listing elements of fraud by nondisclosure); *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 508 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (same).

Appellants focus on emails exchanged between the parties to support their argument that more than a scintilla of evidence existed as to the challenged elements of their claims based on misrepresentations.[4] For example, appellants contend that the evidence showed that Richards

---

[4] The evidence cited by appellants in their response to the summary judgment motion included the affidavit of their expert King, but the trial court sustained objections to that affidavit and did not consider it. Appellants have not challenged this ruling, and we do not consider the affidavit. Further, to the extent appellants ask us to independently review their pleadings as to their allegations of misrepresentations and failure to disclose, we decline to do so. *See* Tex. R. App. P. 38.1(i) (requiring brief to contain appropriate citations to the record).

misrepresented that Dhody was paying well below the market value for the Concordance Collection. In an email that Richards sent to Dhody in September 2005, Richards states that Dhody would be paying $5.00 per pound and that the "going rate" was $100.00 a pound, a "hell of a healthy mark up for you to work with and a hell of a price to purchase them from." Later, in the email, she referenced $50 per pound. Appellants, however, did not present any evidence that, even if her statements in the email as to the collection's value were false, Richards knew that her statements were false when she made them or that she made the statements recklessly without any knowledge of the truth. Appellants also focus on deposition testimony from Haag, asserting that he estimated the value of the stones to be $25 per pound, but that testimony was not limited to the value of the stones in the collection but was in response to questions as to the value of "all the Earthkeepers that you sold to Mr. Dhody." Haag's deposition testimony then did not raise a genuine issue of material fact as to Richards's statements in her email as to the value of the collection. *See* Tex. R. Civ. P. 166a(i).

Appellants also focus on alleged misrepresentations by Richards that Haag had contacts with "celebrities who would be interested in purchasing large stones" and "contacts with trades who would carve the crystals into smaller marketable pieces" and that she and Haag would provide contact information as well as evidence authenticating the source of the stones purchased and an endorsement by Raphaell. "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998); *see Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex. 1992) (per curiam) ("For a promise of future performance to be the basis of actionable fraud, it must have been false at

9

the time it was made."). "[A] party's intent is determined at the time the party made the representation, [but] it may be inferred from the party's subsequent acts after the representation is made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).

Even if we were to conclude that Dhody presented summary judgment evidence that would support a finding that he had not received promised authentication, business contacts, assistance, and endorsements, he did not present evidence that would support an inference that, even if Richards made the alleged promises, she did not intend to perform on her promises when she made them. As to her subsequent acts, they support the contrary finding that she intended to assist Dhody with his business plans for the stones.[5] *See id*. Thus, we conclude that appellants failed to raise a genuine issue of material fact as to their allegations of misrepresentations concerning future performance.[6]

---

[5] For example, the summary judgment evidence included an email from Richards to Haag dated January 23, 2006, in which she states that Dhody was upset with her for not getting "contact information" but that she "sent an e-mail [to Raphaell] like [Dhody] asked." She also asks Haag if there was "[a]nyone else you can think of we can introduce him to."

[6] The evidence at trial included emails showing Richards's attempts to obtain the endorsement of Raphaell in January 2006. Richards forwarded Raphaell's response to Dhody within a few days of receiving it. In the response, Raphaell explains:

> Not all large crystals are Earth Keepers, even if they come from the same mine. The crystals have to have been specifically programmed to record the history of the human race since Atlantean times. Zee is not a friend of mine and I seriously question his integrity. I am sure that the large crystals sell for a very large price. I felt him trying, but not succeeding, to manipulate me into coming to Texas so that he could sell these very large crystals. I trust that your intentions are different.
>
> While any large quartz generator is precious in its own right, I do not consider these crystals that you are referring to as Earth Keepers. There are only 12 that have been programmed from ancient times. Only one that I know of is in the process of activation.

10

As to appellants' fraud claims based on nondisclosure, we similarly conclude that appellants failed to present evidence to raise a genuine issue of material fact as to the challenged elements. Appellants focus on "secret" emails exchanged between Richards and Haag—most of which were exchanged several years after the transactions—arguing that the emails show a coordinated effort by Richards and Haag to "control the flow of information to Dhody." But those emails do not raise a genuine issue of material fact that Richards was aware of facts at the time of the Earthkeepers transactions that she failed to disclose to Dhody. Many of the emails were sent after the parties' dispute arose but before this suit was filed. By this time, Dhody already had purchased the collection "as is," and he could have had the stones appraised at any point but chose not to do so until after he filed suit. *See Bradford*, 48 S.W.3d at 754–55.[7]

**DTPA Claims**

As to appellants' DTPA claims, Richards and ABC asserted, among other grounds, in their summary judgment motion that there was no evidence that they engaged in unconscionable acts nor any evidence that they engaged in false, misleading, or deceptive business practices. *See* Tex. Bus. & Com. Code §§ 17.45(5) (defining "unconscionable action or course of action" to mean

---

Dhody purchased the majority of the stones from the Earthkeepers transactions after receiving a copy of Raphaell's email response. Other emails and evidence also showed that Richards continued her efforts to assist Dhody with his business plans for the stones until 2010.

[7] In their response to the summary judgment motion, appellants focused on an email dated August 22, 2006, in which Richards told Haag that "1.25 for shit quartz is not too shabby." The summary judgment evidence, however, showed that, by that point, Richards had already warned Dhody that some of the stones would not be valuable. For example, Richards advised Dhody in an email that some of the stones from the mine were "crap rock" with "no value to anyone but maybe you in the future," and he responded that the "AGREEMENT IS ALL CRYSTALS WHETHER OF GRADE QUALITY OR NOT."

11

"an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree"), .46(b) (listing "false, misleading, or deceptive acts or practices"), .50(a) (listing elements of DTPA actions). Similar to their motion as to appellants' fraud claims, Richards and ABC also asserted that there was no evidence that they failed to disclose information or made misrepresentations to appellants.

Again focusing on emails exchanged between Haag and Richards, appellants urge that the emails show Haag and Richards's coordinated efforts to control the information to Dhody and to take advantage of him and that the transactions were grossly unfair. For the same reasons that we concluded above that the trial court did not err in granting no-evidence summary judgment as to appellants' fraud claims against Richards and ABC, we conclude that the trial court did not err in granting no-evidence summary judgment as to appellants' DTPA claims based on the same underlying factual allegations. *See Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985) (finding phone conversation occurring approximately one year after alleged misrepresentations occurred to be no evidence of unconscionability under DTPA).

**Harmless Error**

We also note that, even if the trial court erred in granting no-evidence summary judgment, such error was harmless. *See Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 689–90 (Tex. App.—San Antonio 2012, no pet.) (concluding that error in rendering directed verdict was harmless because jury's findings on other issues precluded recovery); *see also* Tex. R. App. P. 41.1(a); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (noting that harmless error rule "applies to all errors"). As to appellants' DTPA claims, the trial court granted a directed verdict on limitations

12

grounds as to all claims asserted against the defendants that were governed by a two-year statute of limitations. The statute of limitations for claims brought under the DTPA is two years. *See* Tex. Bus. & Com. Code § 17.565. Further, the jury's findings that Richards did not breach any written or oral contract with Dhody negate appellants' fraud claims. By its findings, the jury necessarily found that Richards did not fail to comply with any representations that she made as to the quality or quantity of stones or as to promised contacts, endorsements, or other assistance. Thus, any error in granting the no-evidence summary judgment was harmless.

We conclude that the trial court did not err by granting a no-evidence summary judgment in favor of Richards and ABC as to appellants' fraud and DTPA claims and that, even if it did, such error was harmless. Thus, we overrule appellants' first issue.[8]

**Did the trial court err by directing verdict as to certain claims?**

In their third and fourth issues, appellants contend that the trial court erred by directing a verdict on the fraud claims against Haag and the claims against all defendants that were governed by a two-year statute of limitations. Appellants' claims governed by a two-year statute of limitations included their DTPA, negligence, and negligent misrepresentation claims. *See* Tex. Bus. & Com. Code § 17.565 (limitations period for claims brought under DTPA); Tex. Civ. Prac. & Rem. Code § 16.003 (limitations period for negligence claims generally); *Larue v. GeneScreen, Inc.*,

---

[8] Because we have concluded that the trial court did not err in granting a no-evidence summary judgment and that, even if it did, that the error was harmless, we do not reach the cross-points raised by Richards and ABC that the trial court erred by not granting their motion for traditional summary judgment. *See* Tex. R. App. P. 47.1 (requiring courts of appeals to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

13

957 S.W.2d 958, 960 (Tex. App.—Beaumont 1997, pet. denied) (noting that statute of limitations for negligence claims was two years). Appellants contend that the evidence at trial raised fact issues that precluded directed verdict.

### Standard of Review

We review a trial court's directed verdict do novo. *John v. Marshall Health Servs., Inc.*, 91 S.W.3d 446, 450 (Tex. App.—Texarkana 2002, pet. denied). When reviewing a directed verdict based on insufficiency of the evidence, we apply the legal sufficiency standard of review. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *see also City of Keller*, 168 S.W.3d at 823 (test for legal sufficiency same for directed verdicts, summary judgments, and appellate no-evidence review); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) (same). We examine the evidence in the light most favorable to the party against whom the verdict was directed. *See City of Keller*, 168 S.W.3d at 824; *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (noting that "court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" or "if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action").

### Fraud Claims

In their third issue, appellants argue that the trial court erred when it directed a verdict on the fraud claims against Haag because "the record contained evidence giving rise to an inference that Haag had no intention whatever to comply with promises he made to induce Dhody to part with his money to purchase earthkeeper crystals." The trial court concluded on the record that,

14

"[a]ssuming there's evidence that Mr. Haag made a promise, there's no evidence that he had no intention to fulfill that promise at the time the promise was made, which is necessary for it to even state a fraud claim."

Appellants contend that Haag did not provide Dhody with the quantity or quality of stones that Dhody was promised or with promised endorsements and contacts, including celebrities who would purchase the stones. The evidence, however, was undisputed that Dhody purchased the stones from ABC, not Haag; that appellants' expert did not include any value for the stones' purported metaphysical properties; that some of the stones remained in storage in Africa; and that Dhody had not weighed all of the stones that he purchased from ABC. Given this undisputed evidence, we conclude that Dhody failed to present evidence that would support essential elements of a fraud claim against Haag based on the quality and quantity of stones that Dhody purchased from ABC. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *Szczepanik*, 883 S.W.2d at 649; *see also Emerald Oil & Gas Co.*, 348 S.W.3d at 217 (listing elements of fraud claim to include that representation was false when made and that defendant knew false or made it recklessly without any knowledge of its truth).

We similarly conclude that Dhody failed to present evidence that would support essential elements of a fraud claim based on alleged promised endorsements and contacts. *See Spoljaric*, 708 S.W.2d at 434 (intent determined at time promise made but may be inferred from subsequent actions). For example, the evidence established that Haag personally knew Raphaell and tried to get her endorsement for the stones but that he was unsuccessful in his efforts. Thus, even if the evidence supported a finding that Haag promised Raphaell's endorsement, the undisputed

15

evidence of his subsequent actions supports a finding that he intended to fulfill that promise when he made it. *See id*. We conclude that the trial court did not err when it directed a verdict as to appellants' fraud claims against Haag.**⁹**

Further, based on the same analysis as our analysis above as to the fraud claims asserted against Richards and ABC, we conclude that the jury's finding that Haag did not fail to comply with any agreement with Dhody negates the fraud claims asserted against Haag. By its finding, the jury necessarily found that Haag did not fail to comply with a representation that he made to Dhody as to the quality or quantity of stones or as to promised contacts and endorsements. Thus, to the extent the trial court erred by granting a directed verdict, such error was harmless. *See* Tex. R. App. P. 44.1(a); *Flying J Inc.*, 373 S.W.3d at 689–90. We overrule appellants' third issue.

**Limitations**

In their fourth issue, appellants contend that "[f]act issues on the 'discovery rule' defeated any entitlement to directed verdict on claims based on limitations grounds." The trial court directed verdict on limitations grounds as to appellants' claims governed by a two-year limitations period in favor of all of the defendants. Appellants also contend that Richards, ABC, and Haag failed to establish as a matter of law when appellants' claims accrued and that the record confirmed that it was not until 2010 because, in 2010, Richards and Haag "colluded with one another to frustrate Dhody's efforts to take delivery," "colluded to deny Dhody access to information

---

⁹ Haag also urges that the trial court did not err by granting directed verdict as to appellants' fraud claims against Haag because there was no evidence of damage or injury to Dhody or consideration for an enforceable promise and the claims were barred by limitations. We need not reach Haag's additional arguments. *See* Tex. R. App. P. 47.1.

16

confirming what had in fact been delivered," and "plotted to conceal and refuse delivery of material that Dhody had paid for."

"As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). "The discovery rule represents an exception to this general rule of accrual." *Moreno v. Sterling Drug Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). When the discovery rule applies, the cause of action does not accrue and the limitations period does not begin to run "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998); *see Patrick v. Howard*, 904 S.W.2d 941, 944 (Tex. App.—Austin 1995, no writ) (discussing discovery rule).

As a preliminary matter, Richards and ABC pleaded limitations as an affirmative defense to appellants' DTPA claims, but Richards and ABC did not raise it as to the negligence and negligent misrepresentation claims. *See* Tex. R. Civ. P. 94 (listing affirmative defenses). They urge that appellants waived the pleading defect as to the negligence and negligent misrepresentation claims and that the claims were tried by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tex. R. Civ. P. 67. This rule "'applies only where it appears from the record that the issue was actually tried, although not pleaded.'" *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied) (quoting *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).

17

"To determine whether an issue was tried by consent, the trial court examines the record not for evidence of the issue, but rather for evidence of trial of the issue." *Id.* (citation omitted). "A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Id.* "The trial court has broad discretion in determining whether an unpleaded issue was tried by consent." *Id.* at 771–72. Here, the trial court granted directed verdict on limitations grounds without an objection by appellants based on a pleading defect.

Further, the record supports a finding that the issue was actually tried. *See id.* Both sides presented evidence about the parties' respective knowledge of the quantity and quality of the stones during the relevant time periods. We also note that appellants only raised the pleading defect orally during the formal charge conference. *See* Tex. R. Civ. P. 90 (requiring pleading defect to be "specifically pointed out by exception in writing" or complaint deemed waived by party seeking reversal based on defect); *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 856 n.7 (Tex. App.—Dallas 2005, pet. denied) (discussing waiver of pleading defects under rule 90). Thus, we conclude that the trial court did not abuse its discretion by finding that limitations as an affirmative defense to the negligence and negligent misrepresentation claims asserted against Richards and ABC was tried by consent and turn to appellants' substantive challenge to the trial court's ruling on limitations.

Appellants filed suit in 2010. Although the Earthkeepers transactions occurred in 2005 and 2006, appellants argue that limitations did not accrue to bar their claims. They primarily

focus on the overall plan for marketing the stones that continued until 2010 with no specific deadline for performance of alleged promises such as contact information and endorsements and the alleged lack of documentation of the purchases made by Haag and Richards on Dhody's behalf. Evidence at trial, however, showed that Dhody knew in 2006 that he did not have an endorsement from Raphaell or contact information as purportedly promised. Further, although Dhody chose not to take possession of all of the stones that he purchased in 2006, he could have examined them or had them appraised, inventoried, or weighed at any time. Exercising reasonable diligence, he should have been able to discover the facts regarding quality, quantity, marketability, and value of the stones that he alleges in this suit at some point in 2006. *See Neel*, 982 S.W.2d at 886. Thus, we conclude that the evidence established that appellants' causes of action accrued more than two years before they brought suit, that the discovery rule did not save the claims subject to a two-year limitations period, and that the trial court did not err when it directed verdict on claims governed by a two-year limitations period. We overrule appellants' fourth issue.[10]

---

[10] We need not address Haag's other arguments to support the trial court's directed verdict as to the DTPA claims. *See* Tex. R. App. P. 47.1; *see also* Tex. Bus. & Com. Code § 17.49(g) (generally exempting set of transactions involving consideration over $500,000); *Cano v. North Tex. Nephrology Assocs., P.A.*, 99 S.W.3d 330, 339 (Tex. App.—Fort Worth 2003, no pet.) ("We must affirm a directed verdict, even though the trial court's rationale was erroneous, if the directed verdict can be supported on another basis." (citation omitted)).

**Did the trial court err by refusing to submit Dhody's breach of fiduciary duty claim to the jury?**

In their second issue, appellants contend that the trial court erred by refusing to submit Dhody's breach of fiduciary duty claim against Richards to the jury. The trial court denied appellants' request to submit the following questions: (i) "Did [a] relationship of trust and confidence exist between Paramdeep Dhody and Karen Richards?" and (ii) "Did Karen Richards comply with her fiduciary duty to Paramdeep Dhody?" Appellants contend that more than a scintilla of evidence existed that Richards breached her fiduciary duties "by withholding information from Dhody in a variety of respects," such as information on the amount of commission that she was receiving and as to the stones in Haag's possession. Appellants also contend that Richards's status as a fiduciary was established as a matter of law because she stated that she was Dhody's agent and did not contest the existence of fiduciary duties to Dhody in her summary judgment pleadings.

Rules 277 and 278 of the Rules of Civil Procedure require trial courts to submit questions, instructions, and definitions to the jury "which are raised by the written pleadings and the evidence" and necessary "to enable the jury to render a verdict." Tex. R. Civ. P. 277, 278; *see Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 499 (Tex. App.—Texarkana 2002, pet. denied). We review complaints of error in the jury charge under an abuse of discretion standard. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *Niemeyer v. Tana Oil & Gas Corp.*, 39 S.W.3d 380, 387 (Tex. App.—Austin 2001, pet. denied); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (describing abuse of discretion standard of review). "Error in the jury charge is reversible if, when viewed in light of all the circumstances, it amounts 'to such a denial of rights of the complaining party as was reasonably

20

calculated and probably did cause the rendition of an improper judgment.'" *Niemeyer*, 39 S.W.3d at 387 (citation omitted).

Richards argues that any fiduciary duty claims based on an agency relationship were waived. Texas Rule of Civil Procedure 278 provides in relevant part:

> Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; . . . .

Tex. R. Civ. P. 278. Because Dhody did not request a question asking whether a formal fiduciary relationship existed between Dhody and Richards based on an agency relationship, we agree with Richards that any such claim is waived. *See id*.; *see also* Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment PJC 104.1 (2012) ("If the existence of a formal fiduciary relationship is disputed, a question should be submitted inquiring whether the formal fiduciary duty exists at the time of the occurrence or transaction at issue, or with respect to the occurrence or transaction at issue, or both."); *National Plan Adm'rs, Inc. v. National Health Ins. Co.*, 235 S.W.3d 695, 700–04 (Tex. 2007) (discussing fiduciary duty in context of agency relationship, considering terms of agreement between parties, and concluding that no fiduciary duty in the "arms-length business transaction" as a matter of law).

Appellants' requested question was based on an informal fiduciary duty. "An informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). This duty, however, is not created lightly. *Id*.

21

"To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* (citation omitted); *see Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (noting that "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit" to form informal fiduciary relationship in business transaction). The evidence was undisputed that Dhody and Richards met at ABC when he began purchasing items from ABC and that they did not have a "relationship of trust and confidence" prior to the business transactions that form the basis of this suit. *See Associated Indem. Corp.*, 964 S.W.2d at 287. Thus, we conclude that the trial court did not abuse its discretion when it denied appellants' requested questions. We overrule appellants' second issue.[11]

**Were the jury's findings against the great weight and preponderance of the evidence?**

In their fifth issue, appellants contend that they are entitled to reversal and remand for a new trial because the jury's findings on the submitted breach of contract claims were against the great weight and preponderance of the evidence.[12]

---

[11] Richards also argues that the trial court properly directed verdict as to the fiduciary duty claims against her off the record and, as a matter of law, the claims fail because they sound only in contract and there was no evidence of a fiduciary relationship between Dhody and Richards or that Richards breached any duties. Again, we need not reach these arguments. *See* Tex. R. App. P. 47.1.

[12] "The elements of a breach of contract claim are (i) the existence of a valid contract between the plaintiff and defendant; (ii) the plaintiff performed; (iii) the defendant breached the contract; and (iv) the plaintiff was damaged as a result of the breach." *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 815 (Tex. App.—Dallas 2003, pet. denied) (citation omitted).

**Standard of Review**

Appellants challenge the factual sufficiency of the evidence to support the jury's findings. "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We "must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *See id.* (citing, among other authority, *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

**Jury Findings in Favor of Richards**

The jury found that Richards did not fail to comply with her written agreement with Dhody and that Richards did not fail to comply with "an agreement, if any, other than the written agreement" with Dhody. Appellants contend and presented evidence to support a contrary finding, that Richards failed to comply with an agreement. Their evidence included testimony that Dhody did not receive all of the stones that he paid for and that the stones that he did receive were worth much less than he paid. Appellants' evidence included their expert and Dhody's personal assistant. The personal assistant testified about the stones that were in Dhody's possession, and the expert appraised the stones well below what Dhody paid. But the expert did not include any amount for the metaphysical properties of the stones, and it was within the province of the jury to resolve conflicts in the evidence. *See City of Keller*, 168 S.W.3d at 819–20 ("Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses."); *Golden Eagle Archery,*

23

*Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (noting that jury remains sole judge of witnesses' credibility and weight to be given their testimony); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (jury can choose to believe one witness over other witnesses or resolve inconsistencies in their testimony).

Evidence supporting the jury's verdict included the written agreement that the stones were sold "as is," Dhody's demand for "ALL" the stones from the mine in Africa regardless of quality, the failure of Dhody's valuation expert to include any value for metaphysical properties of the stones, and the testimony from Richards and Haag, as well as documentary evidence, that supported findings that Dhody received more weight than he paid for, that the stones were from the mine in Africa, and that Dhody could have taken possession of the stones remaining in Africa but chose not to do so. Other evidence also supported a finding that Richards continued assisting Dhody with his business plans for the stones for several years, despite receiving no compensation for her efforts.

Given the conflicting evidence, the jury could have discounted the testimony of appellants' expert and credited the testimony of Richards and Haag to reach its findings in Richards's favor. The jury could have concluded that the relationship between the parties was a series of transactions between a purchaser, a retailer, and a wholesaler and that Richards did not breach any agreement with Dhody.

**Jury Finding in favor of Haag**

The jury similarly found that Haag did not fail to comply with "the agreement, if any" with Dhody. Dhody argues and presented evidence at trial that the crystals Haag sold to Dhody in

24

2007 were not negative entropy crystals as promised and that Haag agreed to "unconditionally" refund Dhody's money but failed to do so. Dhody focuses on a statement by Haag in a 2010 email that Haag "agree[s] to refund your money" on the transaction. Haag also stated in an email sent in 2007: "If your Unhappy [sic] and we do not come to a deal I will refund your money in less than 30 days."

Other evidence at trial, however, showed that, shortly before suing Haag, Dhody demanded his money back and sought to have Haag sign a written agreement to address the proposed refund but that Haag refused to sign the proposed agreement and only agreed to refund the purchase price contingent on finding another buyer for the crystals. At the time of trial, the crystals remained in Haag's yard, and Dhody had not made arrangements to take possession, although he continued to demand a refund. Given the conflicting evidence, the jury could have concluded that Haag's offer to refund the purchase price several years after the sale had taken place was contingent on finding another buyer which Haag had been unable to find, that Haag's offer in 2010 was rejected by Dhody, and that Haag was not contractually bound to refund the purchase price several years after the transaction was completed.

We conclude that the jury's findings were not against the great weight and preponderance of the evidence. We overrule appellants' fifth issue.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

25

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   April 11, 2014